UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**FILED**

2016 MAR -4 AM 10: 24
CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

MARIO SIERRA,

    Plaintiff,

vs.

    Case No. 3:14-cv-1496-HES-JBT

PORT CONSOLIDATED JACKSONVILLE,
L.L.C.,

    Defendant.

_____/

## ORDER

Before the Court is Defendant's "Motion for Summary Judgment" (Doc. 33, filed Dec. 18, 2015; Plaintiff's Response in opposition thereto (Doc. 34, filed Jan. 4, 2016); and Defendant's Reply to Plaintiff's Response (Doc. 37, filed Feb. 15, 2016). Upon consideration of the record evidence and the relevant case law, the Court determines the following.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mario Sierra ("Plaintiff") was employed by Port Consolidated Jacksonville, L.L.C. ("Defendant") as a "fuel truck driver" from early August 2008 to on or about September 28, 2013. (Doc. 1, ¶ 12; Doc. 33-2). Defendant has two types of trucks—bulk oil wagon trucks and box trucks—and it is common for drivers to switch trucks from time to time. (Doc. 33-3). Plaintiff exclusively or nearly exclusively drove a bulk oil wagon truck during his employment. (Doc. 1, ¶ 12; Doc. 33, ¶ 1).

On November 27, 2012, Plaintiff began experiencing pain and muscle spasms in his fingers, hands, and arms on his left side. (Doc. 1, ¶ 15; Doc. 34-2 at 4). Plaintiff believes the injury was caused by repetitive motions he performed in fulfilling his job duties as a fuel truck

1

driver. (Doc. 1, ¶ 16). He nevertheless continued to perform his job duties without incident. (*Id.* ¶ 17). On January 15, 2013, Plaintiff filed a worker's compensation claim relating to his injury. (*Id.* ¶ 19). After seeing two other orthopedists and being unsatisfied with their care and evaluations, the third doctor, Dr. Bahri, referred Plaintiff for a bilateral upper extremity EMG nerve conduction study on August 20, 2013, which confirmed a diagnosis of bilateral carpal tunnel syndrome. (Doc. 34-2 at 5).

On September 25, 2013, Plaintiff's supervisor, Keith Meyers ("Meyers"), informed Plaintiff that he would need to drive a box truck to Tallahassee for the next two days. (Doc. 1, ¶ 24). This assignment required Plaintiff to lift and pull drums weighing over 100 pounds each. (*Id.*; Doc. 33-3, ¶ 8). Plaintiff told Meyers that he could not drive the box truck because of his injury; Meyers responded that he would get another employee to handle the Tallahassee runs, and Plaintiff could cover that employee's runs to Ocala. (Doc. 34-3). The Ocala-bound truck was a bulk oil wagon truck, but it also carried packages and drums, and Meyers told Plaintiff that someone at the stores could help him with the drums. (*Id.*; Doc. 34, ¶ 6).

The parties do not agree on what happened next. Plaintiff alleges later that same day, Meyers called Plaintiff into his office and told Plaintiff that he needed to go back to Dr. Bahri to check whether Plaintiff had any work restrictions. (Doc. 1, ¶ 27; Doc. 34, ¶ 7). In its Answer to the Complaint, Defendant denies that this interaction took place. (Doc. 5, ¶ 27). Defendant does not provide an alternative chain of events, but rather, it simply states that (1) Meyers told Plaintiff that he would need to drive the box truck for two days on September 25, and (2) on September 26, Plaintiff's orthopedist placed him on work restrictions preventing him from lifting more than 50 pounds. (Doc. 33, ¶¶ 8-9; Doc. 33-3, ¶¶ 13-14). It thus remains unclear what motivated Plaintiff to visit Dr. Bahri, his employer or himself. What is clear is that Plaintiff

2

visited Dr. Bahri on September 26, 2013, Dr. Bahri placed him on work restrictions preventing him from lifting or carrying more than 50 pounds at a time with either hand, and Plaintiff informed Meyers of this restriction on the same day. (Doc. 1, ¶¶ 28-29; Doc. 33, ¶ 9).

The parties also tell a different story as it relates to Plaintiff's cessation of employment at the company. Plaintiff alleges shortly after he told Meyers of his work restriction, Meyers informed Plaintiff that Defendant could not accommodate Plaintiff's 50 pound lifting restriction and that he was required to lift at least 100 pounds. (Doc. 1, ¶ 31; Doc. 34, ¶ 9). Plaintiff alleges that Meyers asked him to return his truck keys and loading cards, as well as a leaf blower that he had borrowed from Defendant. (Doc. 1, ¶ 32, Doc. 34, ¶¶ 9-10). According to Plaintiff, he turned in his truck keys and loading cards on September 27, 2013, and made arrangements to return the next day to return the leaf blower. (Doc. 1, ¶ 33; Doc. 34, ¶¶ 10-11). When Plaintiff met Meyers to return the leaf blower on September 28, 2013, Plaintiff alleges that he was informed by Meyers that Defendant had made the decision to terminate his employment. (Doc. 1, ¶ 33; Doc. 34, ¶ 11).

Defendant disputes this factual history and argues that Plaintiff voluntarily resigned from his position on September 27, 2013. (Doc. 33 at 12-13, 21-22). Defendant asserts that Plaintiff resigned after being told by Defendant that he was required to regularly lift and move items of 100 pounds or more every day, and that his work restriction precluded him from performing his job duties from start to finish every day. (*Id.* at 3; Doc. 33-3, ¶¶ 16-19). Defendant asserts that no reasonable accommodation would enable him to perform his duties, and that Defendant advised Plaintiff the company would allow him to take a medical leave of absence under the FMLA. (Doc. 33-3, ¶¶ 16-19). Defendant alleges that its Human Resources Director, Brenda Ayers ("Ayers"), began to prepare a letter to Plaintiff regarding FMLA leave and his ability to take

3

leave, but Plaintiff voluntarily resigned before Ayers could complete the letter. (*Id.* ¶ 20).

Plaintiff filed a timely charge of disability discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), pursuant to 42 U.S.C. § 2000e-5, received a Notice of Right to Sue from the EEOC, and timely filed this action. (Doc. 1, ¶ 5). Plaintiff originally had counsel representing him in this action, and counsel filed the Complaint on his behalf. However, due to irreconcilable differences between Plaintiff and his counsel, Plaintiff requested that his counsel cease representation. (Doc. 15). Counsel was permitted to withdraw from this action on July 8, 2015. Plaintiff was unable to obtain new counsel and is now proceeding *pro se*. (Doc. 25).

There are six Counts in the Complaint. Counts 1 and 3 allege disability discrimination in violation of the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10 *et seq.*, and the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, respectively. Counts 2 and 4 allege retaliation in violation of the FCRA and ADA, respectively. Count 5 alleges workers' compensation retaliation under Fla. Stat. § 440.205, and Count 6 alleges interference under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the moving party does so, the nonmoving party "must come forward with evidence sufficient to withstand a directed verdict

4

motion." *Id.*

In other words, the entry of summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, a court " 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.' " *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). " '[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' " *Id.* at 827 (quoting *Reeves*, 530 U.S. at 151). "In other words, [the court] must consider the entire record, but 'disregard all evidence favorable to the moving party that the jury is not required to believe.' " *Id.* (quoting *Reeves*, 530 U.S. at 151).

However, the nonmoving party "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). And while *pro se* litigants are afforded leniency in their pleadings (which does not apply here, as Plaintiff's former counsel drafted the Complaint), as a general rule, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient [filing] in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citation omitted).

5

## III. ANALYSIS

### A. Disability Discrimination under the FCRA and ADA

Plaintiff alleges that Defendant discriminated against him in violation of the FCRA and ADA. Disability discrimination claims under the FCRA are analyzed under the same framework as the ADA and therefore can be analyzed together. *Greenberg v. BellSouth TeleComm., Inc.*, 498 F.3d 1258, 1263-64 (11th Cir. 2007). Under the ADA, no employer "shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a)).

A plaintiff may prove disability discrimination by either direct evidence or circumstantial evidence. "Direct evidence is evidence, which if believed, proves existence of [a] fact in issue without inference or presumption." *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997). If the evidence only suggests but does not prove a discriminatory motive, then it is not direct evidence. *See id.* In this case, Plaintiff has presented no direct evidence of discrimination. Thus, Plaintiff must prove his claim by circumstantial evidence.

"To establish a prima facie case of disability discrimination, a plaintiff must show that he (1) is disabled, (2) is a 'qualified' individual, and (3) was subjected to unlawful discrimination because of his disability." *Samson v. Fed. Express Corp.*, 746 F.3d 1196, 1200 (11th Cir. 2014) (citing *Greenberg*, 498 F.3d at 1263). If the Plaintiff establishes a prime facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the employment action. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). If the employer does so, the burden shifts back to the plaintiff to discredit the proffered reason as pretextual. *Id.*

In this case, Defendant argues that Plaintiff has failed to establish a prima facie case of

disability discrimination because he has not provided evidence to support any of the three elements, and that it would be impossible for Plaintiff to do so. Indeed, if Plaintiff has failed to establish one element of his claim, then his claim must fail.

### 1. Disability

The first element requires Plaintiff to demonstrate that he is disabled. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Under the "actual" or "record" prongs of the definition, merely having a physical or mental impairment is insufficient to be considered disabled; "the other half of the definition requires that the impairment substantially limit one or more of [the plaintiff's] major life activities." *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1155-57 (11th Cir. 2005); *see also* 29 C.F.R. § 1630.2(g), (j). A plaintiff satisfies the "regarded as" prong "if the individual establishes that he or she has been subjected to [a prohibited adverse employment action] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," so long as the impairment is not "transitory and minor" in nature. 42 U.S.C. § 12102(3)(A)-(B); 29 C.F.R. § 1630.2(g)(1)(iii), (j)(2). The U.S. Code directs the definition of disability to be construed broadly, and the Code of Federal Regulations enumerates a non-exhaustive list of physical and mental impairments that qualify as disabilities. 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(h). "Major life activities" include the activities of "performing manual tasks" and "lifting." 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1).

In this case, Plaintiff argues in the Complaint that he is disabled under all three definitions of disability; that is, he argues he is actually disabled, he has a record of being

disabled, and Defendant regarded him as being disabled. (Doc. 1, ¶¶ 40-43). Defendant denies these allegations. (Doc. 5, ¶¶ 40-43).

Plaintiff claims that his physical impairment is bilateral carpel tunnel syndrome. This medical issue allegedly caused Plaintiff to experience pain and muscle spasms in his fingers, hands, and arms. The relevant regulation describes a physical impairment as an "anatomical loss affecting one or more body systems, such as neurological [and] musculoskeletal" systems. 29 C.F.R. § 1630.2(h)(1). In his Response to Defendant's Motion for Summary Judgment, Plaintiff attaches a portion of the ALJ's "Final Merits Hearing Order" on his worker's compensation claim. (Doc. 34-2). This order contains a "Findings of Fact" section, which includes a summary of his medical diagnosis of bilateral carpel tunnel syndrome by Dr. Bahri. (*Id.* at 5). In its Motion for Summary Judgment, Defendant does not directly refute the assertion that carpel tunnel syndrome may qualify as a covered physical impairment. (*See* Doc. 33 at 8). Thus, at the present time, the Court finds that Plaintiff's carpel tunnel syndrome qualifies as a physical impairment under the ADA. *See* Fed. R. Civ. P. 56(e)(2).

### i.    *"Actual" and "Record" Prongs*

To be considered disabled under both the "actual" and "record" prongs, Plaintiff must also demonstrate that his carpel tunnel syndrome substantially limits one or more of his major life activities. 29 C.F.R. § 1630.2(g)(3). Defendant focuses its argument on demonstrating that Plaintiff is not disabled because his disability does not substantially limit one or more of his major life activities. (Doc. 33 at 8-11). The term "substantially limits" is to be construed broadly; the Court looks to whether the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Further, "an impairment that is episodic . . . is a disability if it would

8

substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Plaintiff alleges that his physical impairment affected the major life activities of performing manual tasks and lifting. (Doc. 1, ¶ 41). As to the first activity, Defendant argues that there is no evidence to date that Plaintiff was substantially limited in performing manual tasks. Defendant is correct. Plaintiff has provided no evidence that he is substantially limited in performing manual tasks, with the exception of the heavy lifting restriction imposed by Plaintiff's doctor. Other than heavy lifting, Plaintiff does not even identify or describe any types of manual tasks with which he allegedly has difficulty. At the summary judgment stage, this is insufficient. Plaintiff must rebut Defendant's argument by presenting facts and evidence that he is, indeed, substantially limited in performing manual tasks. "A plaintiff must demonstrate that he is substantially limited in a range of manual tasks rather than a narrow category thereof." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1222 (11th Cir. 2000). The Eleventh Circuit has previously affirmed summary judgment for an employer in an analogous case, where the plaintiff's only evidence was a conclusory statement in her doctor's affidavit stating that she was substantially limited in performing manual tasks, and the affidavit was devoid of any specific facts that supported the statement. *See Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1228 (11th Cir. 1999). The Court noted that, other than lifting, the plaintiff did "not identify, specifically or by class, any of the manual tasks that she [was] unable to perform." *Id.* It explained that "[c]onclusory allegations without specific supporting facts have no probative value." *Id.* at 1228 (citation omitted and internal quotation marks omitted).

In addition to presenting no specific facts or evidence to support the allegation that he is substantially limited in performing general tasks, Plaintiff appeared to disagree with his own allegation during his deposition. Plaintiff was asked by defense counsel, "Would you agree with

me that in general you were able to perform general manual labor type of work?" Plaintiff answered, "I was able to do my job." Defense counsel asked, "You were able to do all of the tasks as a tanker driver?" Plaintiff answered, "Right." (Doc. 33-5 at 5).

As to the second alleged major life activity—lifting—it is undisputed that Plaintiff's doctor imposed a 50 pound weight restriction on each hand shortly before Plaintiff was told by Defendant that it could not accommodate his restriction. However, several courts have explained that restrictions on heavy lifting do not necessarily substantially limit the major life activity of lifting. "[C]ourts have consistently held that an individual who functions only 'moderately below average' is not substantially limited." *Reis v. Universal City Dev. Partners, Ltd.*, 442 F. Supp. 2d 1238, 1245 (M.D. Fla. 2006). The Eleventh Circuit has explained that "a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as a lifting restriction, [does] not constitute a disability under the ADA." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1222 (11th Cir. 2000).

This statement was made prior to the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3555 (2008), which created a lower threshold standard for an impairment to qualify as substantially limiting. The amended regulation expressly states that the term "substantially limited" "require[s] a degree of functional limitation that is lower than the standard" previously applied. 29 C.F.R. § 1630.2(j)(1)(iv). Perhaps it is possible post-ADAAA for some instances of diminished activity tolerance to qualify as substantially limiting. Nevertheless, the test still does not ask whether a plaintiff's lifting restriction substantially limits his ability to perform a particular job; the focus remains on comparing an individual's impairment in the performance of a major life activity against most people in the general population. *See* 29 C.F.R. § 1630.2(j)(1)(ii).

10

Defendant argues that Plaintiff's diminished activity tolerance for heavy lifting does not constitute a disability under the ADA. (Doc. 33 at 9-10). As an example, the district court in *Reis* considered analogous cases and held that the plaintiff's permanent 30 pound lifting restriction did not qualify as substantially limiting the major life activity of lifting. *Reis*, 442 F. Supp. 2d at 1247-48. The district court noted that the plaintiff could still lift and move items in a range of other employment positions and was not substantially limited from lifting in her personal life. *See id.* The same analysis applies here. While the threshold standard is now lower, Plaintiff has still provided no evidence that his 50 pound lifting restriction substantially limits the major life activity of lifting more generally. Like the plaintiff in *Reis*, he is not limited from lifting; he is only limited from lifting heavy objects. Plaintiff does not describe in any detail or provide any facts or evidence in his Response regarding how and to what extent his lifting restriction affects the major life activity of lifting, apart from how the restriction affects his ability to perform a particular job. This is insufficient, and Plaintiff has failed to meet his burden of demonstrating that his diminished activity tolerance for lifting qualifies as a disability. At the summary judgment stage, Plaintiff must come forward with facts and evidence to support his argument, which he has not; as explained above, conclusory statements without specific supporting facts are not afforded probative value.

In sum, Plaintiff has failed to demonstrate that he is disabled under the "actual" and "record" prongs of the ADA and FCRA. *See* 42 U.S.C. § 12102(1). He has not established a prima facie case as to the first element of the analysis, and the Court need not analyze the second and third elements of the test under the "actual" and "record" prongs. The Court will next consider whether Plaintiff has demonstrated he was nonetheless "regarded as" having a physical impairment by Defendant.

### ii.     *"Regarded as" Prong*

Pursuant to statute, an individual is "regarded as having . . . an impairment" if the individual is subjected to a prohibited action "because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *see also* 29 C.F.R. § 1630.2(*l*)(1) (clarifying that the standard is "whether or not the impairment substantially limits, or is perceived to substantially limit, a major life activity"). However, a plaintiff cannot base a "regarded as" claim on "impairments that are transitory and minor," which is defined as "an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Prior to the ADAAA, "[a]s with actual disabilities, a perceived impairment must [have been] believed to substantially limit a major life activity of the individual." *Hilburn*, 181 F.3d at 1230. The ADAAA thus removed this requirement and "made it significantly easier for plaintiffs to bring 'regarded as' disabled claims." *E.E.O.C. v. Am. Tool & Mold, Inc.*, 21 F. Supp. 3d 1268, 1275 (M.D. Fla. 2014); *see also Harty v. City of Sanford*, No. 6:11-cv-1041-Orl-31KRS, 2012 WL 3243282, at *5 (M.D. Fla. Aug. 8, 2012) (discussing the more expansive standard for "regarded as" claims under the ADAAA). The focus of these claims "is not on the plaintiff's actual condition, but how the Defendant perceived [his] condition, including the reactions and perceptions of the persons interacting with or working with him." *Am. Tool*, 21 F. Supp. 3d at 1275 (citation and internal quotation marks omitted). Under the new standard, " '[e]vidence that a covered entity took a prohibited action because of an impairment will establish coverage.' " *Harty*, 2012 WL 3243282, at *5 (quoting 29 C.F.R. § 1630.2(*l*), App.)).

In this case, Plaintiff alleges in the Complaint that Defendant regarded or perceived him to be disabled. (Doc. 1, ¶ 43). He also reiterates this allegation in his Response to Defendant's

Motion for Summary Judgment. (Doc. 34 at 4). In both filings, Plaintiff states that he consistently dealt with Defendant with regards to his ongoing medical treatment and informed Defendant of his physical impairment, medical restrictions, and need for surgery.

Throughout its motion, Defendant argues that Plaintiff cannot establish he is disabled because he cannot demonstrate that his impairment substantially limits him in one or more major life activities. (Doc. 33 at 7-11, 14-15). Defendant cites to pre-ADAAA cases to support this contention and makes no mention or argument directed to the new, easier standard for "regarded as" claims. In other words, Defendant fails to address the issue of whether it perceived Plaintiff to have a physical impairment, regardless of whether that physical impairment substantially limits any major life activity.

Even if Defendant had argued that it did not perceive Plaintiff to have a physical impairment, evidence that Defendant produced in support of its motion precludes summary judgment on this point. As a notable example, Defendant states in its "Statement of Undisputed Material Facts" that Plaintiff's heavy lifting restriction based on his carpel tunnel syndrome precluded Plaintiff from performing his job duties from start to finish each day. (Doc. 33, ¶ 12). Defendant orally explained this to Plaintiff on the same day it learned of Plaintiff's lifting restriction, and Defendant believed Plaintiff to be eligible for FLMA leave. (*Id.* ¶ 13).

When making all reasonable inferences in favor of the non-moving party, this Court finds that there exists a genuine dispute of material fact as to whether Defendant perceived Plaintiff as having a physical impairment. The Court will next consider the second and third elements of the test for disability discrimination based on the "regarded as" theory of disability.

### 2. Qualified Individual

The second element of the disability-discrimination test requires the plaintiff to be a

13

"qualified individual." Under the ADA, a " 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The statute explains that "consideration shall be given to the employer's judgment as to what functions of a job are essential," and a preexisting written description of the job "shall be considered evidence of the essential functions of the job." *Id.* The corresponding regulation defines "reasonable accommodation" in relevant part as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of the position." 29 C.F.R. § 1630.2(o)(1)(ii).

However, the regulation also states that an employer "is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong (paragraph (g)(1)(iii) of this section)." *Id.* § 1630.2(o)(4). It logically follows from this exception that a plaintiff who proceeds only under the "regarded as" prong must demonstrate he is a qualified individual based on his ability to perform the essential functions of his job *without* reasonable accommodation.

Defendant argues that regularly lifting 100 pounds is an essential function of the job of a fuel truck driver. (Doc. 33 at 12). One of its exhibits is a preexisting, written "Job Description" of the position of "Fuel Truck Driver." (Doc. 33-2). Under "Essential Duties and Responsibilities," the only enumerated duties related to lifting include connecting hoses, attaching a ground wire to the truck, and performing emergency roadside repairs such as changing tires. (*Id.*). Meyers states in his affidavit that Plaintiff's job duties included lifting and connecting hoses that weighed approximately 75 pounds, lifting drums of oil weighing

14

approximately 400 pounds onto the truck, moving kegs of oil weighing approximately 120 pounds around the inside of the truck, and dragging a 100-foot hose up and down steps. (Doc. 33-3, ¶ 8). Meyers states that Plaintiff was cross trained on both types of trucks and it was common for drivers to switch trucks from time to time. (*Id.* ¶ 9). The ability to "regularly lift and/or move more than 100 pounds" is not listed under "Essential Duties and Responsibilities," but it is listed under "Physical Demands." (Doc. 33-2). This section states, "The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions." (*Id.*).

In opposition, Plaintiff argues that he was not regularly required to lift 100 pounds because he was assigned to driving a bulk oil wagon truck that did not require him to engage in heavy lifting, especially as it related to lifting oil drums. (Doc. 34, ¶ 3). However, it is undisputed that both bulk oil wagon trucks and box trucks have the capacity to carry packages and oil drums. After Plaintiff informed Meyers that he could not drive a box truck because he could not lift the drums, Meyers reassigned Plaintiff to cover another employee's bulk oil wagon truck. (Doc. 34, ¶¶ 3-6). This was still problematic for Plaintiff because the other employee's bulk oil wagon truck also carried packages and drums on its route. (*Id.* ¶ 6). Further, Plaintiff concedes in his affidavit that lifting 100 pounds is a physical requirement for both box trucks and bulk oil wagon trucks, which "was impossible for [him] to do." (Doc. 34-1, ¶ 11).

It is clear from the evidence that Plaintiff would require an accommodation in order to perform the essential functions of the job of "fuel truck driver." Defendant argues there is no reasonable accommodation that would allow Plaintiff to perform the essential functions of his job, but the Court need not undertake this analysis. Plaintiff is proceeding solely under the

"regarded as" definition of disability, and Defendant is not required to provide Plaintiff a reasonable accommodation. 29 C.F.R. § 1630.2(o)(4). As such, Plaintiff cannot demonstrate that he is a qualified individual who is able to perform the essential functions of his job without a reasonable accommodation.

The Court need not consider the third element of the test for disability discrimination, which asks whether the plaintiff "was subjected to unlawful discrimination because of his disability," *Samson*, 746 F.3d at 1200, because he has failed to establish the second element of the test. Thus, while there exists a genuine dispute of material fact as to whether Plaintiff was terminated or voluntarily resigned—the parties submit competing affidavits to support their respective version of events—this dispute is not dispositive of the outcome, because Plaintiff failed to establish another necessary element of his claim.

**B. Retaliation under the FCRA and ADA**

Plaintiff alleges that Defendant engaged in retaliation against him under the FCRA and ADA. As with disability discrimination claims, these claims can be considered together. *Greenberg*, 498 F.3d at 1263-64. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge . . . under this chapter." 42 U.S.C. § 12203(a). To state a claim for ADA retaliation, a plaintiff must demonstrate that: "(1) he engaged in conduct protected by the ADA; (2) he was subjected to an adverse employment action at the time, or after the protected conduct took place; and (3) the defendant took an adverse employment action against him because of his protected conduct." *Collado*, 419 F.3d at 1158. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of retaliation by articulating a legitimate, non-retaliatory reason for the challenged

16

employment decision. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999). If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the proffered non-retaliatory reason is pretextual. *Id.*

The ADA contains a detailed statute that includes various types of acts that qualify as an unlawful employment practice—that is, discrimination on the basis of disability. *See* 42 U.S.C. § 12112(b). This list includes not making reasonable accommodations to the known impairments of an otherwise qualified employee and denying employment opportunities to an otherwise qualified employee if such denial is based on the need of the employer to make a reasonable accommodation. *Id.* § 12112(b)(5)(A)-(B). Under the "regarded as" prong, the corresponding regulation also lists the prohibited acts of termination and placement on involuntary leave. 29 C.F.R. § 1630.2(*l*)(1).

Defendant argues that Plaintiff did not engage in any statutorily protected activity, as he neither opposed any practice made an unlawful employment practice by the ADA, nor made a charge under the ADA during his employment. (Doc. 33 at 16). Importantly, not all adverse employment actions are cognizable under the ADA; the employment action must be materially, objectively adverse. *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir. 1998). "[I]t is not enough that a [change in work assignment] imposes some *de minimis* inconvenience or alteration of responsibilities." *Id.* In this case, Defendant requested Plaintiff to drive a box truck for two days; Plaintiff alleges that he engaged in protected activity by requesting a reasonable accommodation to drive the bulk oil wagon truck he had always driven. (Doc. 1, ¶ 52). Plaintiff further alleges that Defendant retaliated against him for having requested a reasonable accommodation by terminating his employment. (*Id.* ¶ 54).

As to the first element, Plaintiff must demonstrate that he engaged in protected conduct—

17

in other words, that he opposed an action made unlawful under the ADA. The action which Plaintiff opposed is Defendant's temporary reassignment of his duties for two days and alleged failure to provide Plaintiff with a reasonable accommodation. This argument fails for two reasons. First, the temporary reassignment of Plaintiff's work duties does not qualify as an adverse employment action. The Eleventh Circuit has made clear that the adverse action must be objectively, materially adverse, and the temporary alteration of Plaintiff's work assignment does not fall within this definition. Second, as previously established, an employer is not required to provide a reasonable accommodation to an employee whose disability qualifies solely under the "regarded as" prong. 29 C.F.R. § 1630.2(o)(4). Even assuming for the sake of argument that Defendant failed to provide Plaintiff with a reasonable accommodation, this does not constitute an adverse employment action under the ADA in this case.

Plaintiff has failed to demonstrate that Defendant engaged in unlawful conduct, and thus, Plaintiff could not have opposed any unlawful practice. The Court need not consider the remaining elements of the retaliation test, and Plaintiff's retaliation claim must fail.

### C. Worker's Compensation Retaliation

Count 5 of the Complaint alleges worker's compensation retaliation under Fla. Stat. § 440.205. That statute states, "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." *Id.* To state a prima facie case of retaliation for filing a worker's compensation claim under Florida law, an employee must demonstrate: "(1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal connection between the participation in the protected expression and the adverse action." *Russell v. KSL Hotel Corp.*, 887 So. 2d 372, 379 (Fla. 3d DCA 2004).

In this case, Plaintiff filed a claim for worker's compensation on January 15, 2013. (Doc.

1, ¶ 75). This qualifies as statutorily protected conduct. Plaintiff alleges that Defendant

terminated Plaintiff in retaliation for having pursued and obtained worker's compensation

benefits. (*Id.* ¶ 76). As noted above, whether or not Plaintiff was terminated or voluntarily

resigned is a genuine dispute of material fact, as the evidence in support of each party's version

of events consists of competing affidavits by the respective parties. (Doc. 33-3; Doc. 34-1). The

Court must next consider whether Plaintiff has established the requisite causal connection.

"In order to satisfy the "causal connection" prong of a prima facie retaliation case, a

plaintiff must, at a minimum, generally establish that the defendant was actually aware of the

protected expression at the time the defendant took the adverse employment action." *Russell*, 887

So. 2d at 379 (citing *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)).

In cases where there exists circumstantial evidence of an employer's awareness of the protected

expression, courts have also found "a curious temporal proximity" between the protected activity

and the adverse action. *See Raney*, 120 F.3d at 1197 (summarizing analogous cases).

The only evidence Plaintiff cites in support of the causal link is the fact that he filed a

worker's compensation claim on January 15, 2013, and the fact that he was terminated (assuming

for the sake of argument that he was terminated) on September 28, 2013. (Doc. 34, ¶¶ 14-16, 18-

20). It is undisputed that Defendant was aware Plaintiff had filed a claim. Nevertheless, there

does not exist "a curious temporal proximity" in this case. The Eleventh Circuit has stated that

when causation is based on "temporal proximity, without more, [it] must be very close." *Thomas

v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted). Even a "three

to four month disparity between the statutorily protected expression and the adverse employment

action is not enough." *Id.* (citing cases). In the absence of other evidence tending to show

causation, a delay of this length is too attenuated, and "the complaint of retaliation fails as a matter of law." *Id.*

It is clear from the case law that Plaintiff's claim of worker's compensation retaliation must fail. Approximately nine months passed between the time Plaintiff filed his claim and the time he suffered the alleged adverse action. Without more, this causal link is too attenuated.

### D. Interference under the FMLA

Count 6 alleges interference under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. "The FLMA protects employees against interference with the exercise or attempted exercise of their substantive rights under the statute." *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1247 (11th Cir. 2015). "To state a claim of interference, the employee must allege that he was entitled to a benefit under the FMLA and was denied that benefit." *Id.* To be a "covered employee" under the FLMA, the employee must have been employed by the employer for at least twelve months and must have worked at least 1,250 hours during the previous twelve month period. *Id.* (citing 29 U.S.C. § 2611(2)(A)). The FLMA only applies to private-sector employers with fifty or more employees. *Id.* (citing 29 U.S.C. § 2611(4)A)). An employer must give an employee notice of his FLMA eligibility within five days of learning that he may be entitled to FLMA leave. 29 C.F.R. § 825.300(a)(1).

In the Complaint, Plaintiff alleges that at the time of his termination, he was entitled to take FMLA leave because he suffered from a serious health condition, namely, carpel tunnel syndrome. (Doc. 1, ¶ 85). Plaintiff alleges that Defendant was aware of Plaintiff's health condition and of his need to take medical leave, yet Defendant failed to notify Plaintiff of his right to take FLMA leave, interfered with his rights by failing to notify him, and interfered with his rights by terminating him. (*Id.* ¶¶ 87-88).

Defendant contests these allegations in its Motion for Summary Judgment. Namely, Defendant alleges that it orally advised Plaintiff of his right to take FMLA leave upon being notified of Plaintiff's lifting restriction on September 26, 2013. (Doc. 33 at 21). The next day, Defendant alleges that Ayers began preparing a letter to Plaintiff regarding FMLA leave and his ability to take leave, but prior to completion of the letter that same day, Plaintiff voluntarily resigned from his position. (*Id.*). Thus, Defendant argues it in no way violated or interfered with Plaintiff's FMLA rights.

In his Response, Plaintiff wholly fails to respond to Defendant's FMLA argument. Federal Rule of Civil Procedure 56 requires a party asserting that a fact is genuinely disputed to support his assertion by citing to specific parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A). When a party fails to properly support or address a fact, a court may "consider the fact undisputed for purposes of the motion." *Id.* R. 56(e)(2). The Court will consider the facts alleged in support of Defendant's FMLA argument undisputed for purposes of the motion. As such, Plaintiff's FLMA claim fails.

## IV. CONCLUSION

Plaintiff has failed to establish a prima facie case of (1) disability discrimination under the ADA and FCRA, (2) retaliation under the ADA and FCRA, (3) retaliation under Florida's workers' compensation statute, and (4) FLMA interference. There are no genuine disputes of material fact in this case, and summary judgment in favor of Defendant is appropriate.

Accordingly, it is hereby **ORDERED**:

1.  Defendant's "Motion for Summary Judgment" (Doc. 33, filed Dec. 18, 2015) is **GRANTED**; and

2.  The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this ___3rd___ day of March, 2016.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Mario Sierra, *pro se*
Alison Thomas, Esq.
Nicole M. Wall, Esq.